# NOTICE OF REMOVAL EXHIBIT A

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

FILED
11/22/2019 9:49 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH11396

7467945

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

DANA HOKIN and                         )
DANA HOKIN GRANTOR TRUST,              )
                                       )
            Plaintiffs,                )   No. 2019CH11396
                                       )
      v.                               )
                                       )   Hon. David B. Atkins
RICHARD HOKIN, RICHARD HOKIN           )
REVOCABLE TRUST and CENTURY            )
AMERICA, LLC,                          )
                                       )
            Defendants.                )
                                       )

## ORDER

This matter coming to be heard on Plaintiffs' Routine Motion for Leave to File an Amended Complaint, it is hereby ordered that Plaintiffs are granted leave to file an Amended Complaint.

SO ORDERED    JUDGE DAVID B. ATKINS

NOV 20 2019

Circuit Court-1879

_____
Honorable David B. Atkins

Paul K. Vickrey
Dylan M. Brown
Vitale, Vickrey, Niro, Solon & Gasey
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
Phone: (312) 236-0733
vickrey@vvnlaw.com
dbrown@vvnlaw.com
**Attorneys for Plaintiff**

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| DANA HOKIN and<br>DANA HOKIN GRANTOR TRUST,<br><br>   Plaintiffs,<br><br> v.<br><br>RICHARD HOKIN, RICHARD HOKIN<br>REVOCABLE TRUST and CENTURY<br>AMERICA, LLC,<br><br>   Defendants. | )<br>)<br>)<br>) No.  2019CH11396<br>)<br>) Hon. David B. Atkins<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT FOR SPECIFIC PERFORMANCE AND OTHER RELIEF

 Plaintiffs, Dana Hokin and Dana Hokin Grantor Trust, for their Amended Complaint against Defendants, Richard Hokin, Richard Hokin Revocable Trust and Century America, LLC, state as follows:

### NATURE OF ACTION

 1. Plaintiffs bring this action for specific performance arising from an enforceable contract, or, alternatively, promissory estoppel, breach of fiduciary duty and rescission based on fraudulent inducement.

### PARTIES, JURISDICTION AND VENUE

 2. Dana Hokin ("Dana") is a resident of Chicago, Illinois; she is Trustee of Plaintiff Dana Hokin Grantor Trust.  Dana served as Managing Director and CEO of Gorda Estates Limited, d/b/a the Bitter End Yacht Club, for decades the world's premier sailing and watersports destination, on Virgin Gorda, British Virgin Islands ("BVI").  Dana was responsible for the overall strategy and expansion of the company's 40-year old brand, with executive offices based in Chicago.  During her 20-year tenure she also served as President of the Bitter End Yacht

FILED DATE: 1/22/2019 9:49 AM   2019CH11396

Club, International LLC, building the management company that oversees the corporate strategy, brand development, design and marketing for the resort's world-class, 84-room hotel that includes three retail venues, two restaurants, a full-service marina, watersports and ferry service.

3.     Century America, LLC ("CALLC") is a Delaware limited liability company whose members include other limited liability companies with Illinois residents as members. CALLC has regularly conducted business in Illinois, and, until at least 2018, maintained an office in Chicago, Illinois (in the John Hancock Building).

4.     CALLC is registered to conduct business in Illinois, and its registered agent is Gail Bley of Gould & Ratner in Chicago.  Ms. Bley drafted the Note at issue in this case; she also formerly represented Plaintiffs for many years.

5.     Richard Hokin ("Richard") is a Connecticut resident and a Manager of CALLC. He regularly visits Illinois, including visits to conduct the business of CALLC.  All of Richard's representations at issue in this case were made in communications into Illinois, and the note at issue was prepared and signed in Chicago, Illinois.  Richard is Trustee of Defendant Richard Hokin Revocable Trust.

6.     Accordingly, personal jurisdiction exists over all Defendants in Illinois, and venue is appropriate in Chicago, Illinois.

## BACKGROUND

7.     CALLC is the Hokin families closely held holding company.  It is comprised of a diverse portfolio of assets that include investments in Energy & Exploration Technology, Fine Art, Marketable Securities and Real-estate/Hospitality companies one of which is located in the BVI (Gorda Estates Limited d/b/a Bitter End Yacht Club).  Richard is the chairman of CALLC; he is also the chairman of Intermountain Industries which, until its exploration company went bankrupt, was the most significant holding in the CALLC portfolio. Today Gorda Estates

2

FILED DATE: 1/22/2019 9:49 AM   2019CH11396

Limited (and associated BVI holdings) is considered the most important asset in the portfolio. Two Family Partnerships own CALLC: 4H LLC (Richard Hokin's Family) and WATLLC (William Hokin's Family).

8.      Dana was recruited in 1993 by her late grandfather Myron Hokin to move to Chicago to oversee the family's recreational asset, Bitter End Yacht Club.  Dana served as Marketing Director from 1993-1997, during which time she overhauled the reservations and sales department, designed and led marketing and public relation strategies, and oversaw the building of a proprietary direct marketing database platform.

9.      Upon Myron's death in 1997, Dana received Myron's 1/3 interest in Bitter End Yacht Club (including real estate and associated assets).  Richard thereafter requested Dana to contribute that ownership interest to the family partnership (4H LLC), and she did so.

10.     Following Myron's death, Richard appointed Dana first as Deputy Managing Director and then as Managing Director of Bitter End.  Dana also assumed the role of General Manager of Bitter End and resided there for 10 months.  In 1999, at Richard's direction, Dana hired a third- party management company to oversee operations of the resort.

11.     In 2006 Richard requested Dana to remove Bitter End's existing outside management team and rebuild the management company.  This required relocating the sales and reservations office from Miami and Michigan back to Chicago, recruiting a new onsite executive team, obtaining refinancing of the asset to support the sorely needed renovation of 48 beachfront accommodations, and building a new restaurant and a new grocery/provisioning store.  Dana accomplished all of these tasks while overseeing the management of the 84-room resort and marina.

12.     At Richard's request, Dana played many roles: Managing Director of Gorda Estates Limited and North Sound Express LLC (an independent ferry service in the BVI),

3

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

President of Bitter End Yacht Club International LLC ("BEYCI") – a wholly owned subsidiary of CALLC, as well as President of North Sound Marketing, a wholly owned subsidiary of CALLC, an ecommerce retail company. In her capacity of President of BEYCI, Dana also held the role of Sales and Marketing Director, Retail Manager and Buyer, reporting to Richard.

13.     After leading the restructuring of the management company in 2006, Dana successfully developed the Bitter End Yacht Club's positioning into the residential resort market. Under Dana's leadership, the Bitter End Yacht Club brand flourished, and the resort consistently rated one of the top resorts in the Caribbean and one of the tops in the world by *Forbes, Conde Nast Traveler, Travel & Leisure* and *Town & Country* magazines. Additionally, Dana developed and expanded the Bitter End brand into retail, e-commerce, global web presence, and extensive product development and strategic partnerships. She further strengthened Bitter End's role in the Virgin Gorda community through programs such as adopting the Robinson O'Neal Primary School in Virgin Gorda and developing the home training site for the British Virgin Island Special Olympics Sailing Team.

14.     As a member of the 4H LLC, Dana received from 4H LLC an annual, guaranteed payment, as did her siblings, who did not have key asset-based leadership responsibilities. Given her significant responsibilities and achievements (and attendant hardships which included commutes to, and extended stays in, the BVI with a young child), Dana requested a compensation program with a formal salary. Richard agreed that Dana was entitled to such a compensation program, but when asked about the status of that program, he consistently responded: "we are working on a plan," or "we are calculating a formula." His short-term solution was to have CALLC advance Dana money on a monthly basis to cover her personal as well as business expenses. Such "advances" ended in 2009 even though Dana's responsibilities remained unchanged.

4

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

15.      In 2014, Richard decided that he wanted to run the BVI operations himself. Dana agreed to step down; she also agreed that her guaranteed payments from 4H LLC would end in 2017. At that time, Richard had documents prepared which structured the "advances" which Dana had earned as a "loan." Richard gave no explanation to Dana for this move, he simply assured Dana that such arrangement was necessary at the time. Dana balked at signing the documents (one of which was the Promissory Note attached as Exhibit A) because she had fully earned the compensation deemed "advances." Moreover, Dana also questioned why her and her Trust's interest in 4H LLC was the stated collateral for the Note. Richard thereupon unequivocally promised her that if she signed the documents, he would personally assume her "obligation," and cancel or eliminate Dana's exposure under the Note. Accordingly, by signing the Note, there would be no adverse impact to her or her family.

16.      Accordingly, on October 3, 2014, Richard called Dana in Chicago and repeatedly assured her that she should not worry about signing the documents because he would be promptly purchasing the Note, assuming her obligation and "eliminat[ing] your exposure":

> [T]alking to you there's one issue that I see that is an ongoing concern and I see that is that you don't want to be exposed to your partners particularly if I'm not around….And I okay so I have a solution which is pretty simple. As soon as possible, which I think shouldn't be very long after we sign up on this deal, *I will purchase the note from 4H and if anything happens to me, or something will happen to be eventually before the note is settled,* I will, um, to you, *I will bequeath the note to you.* So you will just get, you will owe yourself the money and you don't have to worry about that. And *that's something I will commit to get done ASAP.*
>
> \*   \*   \*
>
> Nothing is predicable so that's why I'm proposing to do it this way.
>
> \*   \*   \*
>
> I'm sure there are other concerns but I don't think, I think *this pretty much eliminates your exposure* because some catastrophic issue. . . . *I don't think I can make a written commitment because that might cause other issues. But, I mean you certainly have my word and I'm not going back on it.*

5

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

\*    \*    \*

***I don't want you to be burdened with that,*** you know, feeling that you have that exposure and ***that's why I, you know, I, I, I was, am willing, willing to do this.***

\*    \*    \*

***I'll buy the, buy the partnership out. I'll buy the assets from the partnership. I think that's fair both to you and the rest of the partners.***

\*    \*    \*

I don't want you living your life feeling like you got the sword of Damocles over your head. I don't. I don't think that is productive for any of us. I have to give my lawyer credit for coming up with that idea.

(Tr. of October 3, 2014 conversation; emphasis added).

17. In that same conversation, Dana specifically asked why it was necessary "to secure all the [her] assets to the Note?" Richard responded, "because you have to have enough… backing so that it doesn't create some sort of taxable transaction."

18. In reliance on these assurances, Dana signed (personally and on behalf of the Dana Hokin Grantor Trust) and returned the Promissory Note and other documents on or about October 23, 2014.

19. Consistent with his pledge, Richard paid accrued interest on the Note. For example, on January 28, 2016, Richard wired Dana $32,257.96, and instructed her to wire the same amount of money to CALLC, which she did. Likewise, on February 1, 2017, Richard wired Dana $32,300 and instructed her to write him a check for $32,257.91, which she did. Further, in February of 2018, he assured Dana, in writing: ***"I personally have taken on the risk of your obligation to Century [CALLC] and am personally responsible for cash interest payments to Century."***

6

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

20.     In late October of 2019, Dana learned that in a document dated "as of February 1, 2016," the Richard Hokin Revocable Trust "purchased" the Note from CALLC in a convoluted transaction under which:

a.     no money changed hands;

b.     the "purchase" was achieved through a Note signed by Richard individually and the Richard Hokin Revocable Trust;

c.     Richard and his Trust agreed to pay interest annually; and

d.     Richard was on both sides of the transaction; among other things, he signed, on behalf of CALLC, the "Allonge" in which CALLC endorsed all of its interest in the Note executed by Dana to the Richard Hokin Revocable Trust.

All such documents are attached as Exhibit B.  Richard kept this transaction secret from Dana.

21.     It is now evident that these machinations were all part of Richard's plan to orchestrate a default on the Note in order to obtain the stated collateral for the Note: Plaintiffs' valuable membership interests in 4H LLC, the value of which is largely premised on the very BVI assets which Dana worked so hard for over twenty years to enhance.  It also now appears that Richard planned such a foreclosure in order to obtain Dana's interest before he puts any CALLC assets on the market.

22.     In that regard, unbeknownst to Dana, on May 12, 2017, Richard caused to be filed with the Illinois Secretary of State a UCC Financing Statement against "All of [Dana's] right title and interest as a member of and in 4H LLC and the proceeds and products thereof."

23.     Promptly upon learning of the lien, on June 11, 2019, Dana reminded Richard of his promises to purchase the Note.  Richard responded that he was working on a proposed "resolution."  When pressed for the proposed resolution, on June 22, 2019 Richard responded, "It is forthcoming."  Finally, on August 15, 2019, Richard revealed his "resolution": "the resolution is for you [Dana] to pay it [the Note] off in full."

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

**COUNT I**

**SPECIFIC PERFORMANCE AGAINST RICHARD HOKIN AND THE RICHARD
HOKIN REVOCABLE TRUST
(CONTRACT)**

1-23.    Plaintiffs restate Paragraphs 1-23 as Paragraphs of 1-23 of Count I.

24.    Plaintiffs and Richard extended into a valid, binding and enforceable contract in October of 2014.  At that time, Richard promised to promptly purchase the Note and cancel Plaintiffs' obligations thereunder if Dana signed the Note and other documents, and (2) Dana thereupon signed and returned the Note and other documents.

25.    Plaintiffs complied with the terms of that contract.

26.    Richard has failed and refused to perform his part of the contract.

**WHEREFORE** Plaintiffs seek the entry of judgment requiring Richard Hokin and the Richard Hokin Revocable Trust to cancel Plaintiffs' obligations under the Note.  Plaintiffs also seek an award of their costs and any other relief this Court orders.

**COUNT II**

**SPECIFIC PERFORMANCE AGAINST RICHARD HOKIN
AND THE RICHARD HOKIN REVOCABLE TRUST
(ALTERNATIVE CLAIM BASED ON PROMISSORY ESTOPPEL)**

1-23.    Plaintiffs restate Paragraphs 1-23 as Paragraphs of 1-23 of Count II.

24.    In October of 2014, Richard made unambiguous promises to Dana to purchase the Note and cancel Dana's obligations thereunder.

25.    Dana relied on those promises by signing – individually and on behalf of the Dana Hokin Grantor Trust – the Note and other documents.

26.    Richard requested and expected that reliance.

27.    Plaintiffs' reliance was detrimental, inasmuch as Richard has repudiated his promises and has demanded that Plaintiffs pay the Note.

8

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

**WHEREFORE** Plaintiffs seek the entry of judgment requiring Richard Hokin and the Richard Hokin Revocable Trust to cancel Plaintiffs' obligations under the Note.  Plaintiffs also seek an award of their costs and any other relief this Court orders.

<u>**COUNT III**</u>

**FRADULENT INDUCEMENT AGAINST
RICHARD HOKIN AND THE RICHARD HOKIN REVOCABLE TRUST**

1-23.   Plaintiffs restate Paragraphs 1-23 as Paragraphs of 1-23 of Count IV.

24.   Richard's promises to Dana were (1) of material fact; (2) made for the purpose of inducing Dana to sign the Note; (3) known by Richard to be false, but reasonably believed to be true by Dana; and (4) were relied by Dana to her detriment by signing the Note.

**WHEREFORE** Plaintiffs seek the entry of judgment rescinding the Note, plus an award of costs and any other relief this Court orders.

<u>**COUNT IV**</u>

**BREACH OF FIDUCIARY DUTY AGAINST RICHARD HOKIN**

1-23.   Plaintiffs restate Paragraphs 1-23 as Paragraphs 1-23 of Count III.

24.   Based on his position as Manager and member of the family's limited liability companies, and by virtue of the trust and confidence which Dana had in her father, Richard owed Dana fiduciary duties.

25.   Richard breached those duties when he lied to Dana and planned to divert or reduce Dana's interest in 4H LLC (and ultimately, the Bitter End assets) by: (1) inducing her to sign the Note; (2)  choreographing a default on the Note; and (3) seeking to obtain control over Dana's interest in 4H LLC prior to any sale of CALLC assets.

26.   Dana has been damaged by Richard's breach of fiduciary duties.

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

**WHEREFORE,** Dana Hokin seeks entry of judgment against Richard Hokin in an amount of compensatory damages to be determined at trial, costs of suit and other relief this Court orders.

<u>COUNT V</u>

**ALTERNATIVE CLAIM FOR FRAUDULENT INDUCEMENT AGAINST CALLC**

1-23.   Plaintiffs restate Paragraphs 1-23 as Paragraphs of 1-23 of Count IV.

24.   Richard's actions are also attributable to CALLC by virtue of his status of Manager of CALLC and the fact that he is, for all practical purposes, the sole decision make of CALLC.

25.   Richard's promises to Dana were (1) of material fact; (2) made for the purpose of inducing Dana to sign the Note; (3) known by Richard to be false, but reasonably believed to be true by Dana; and (4) were relied by Dana to her detriment by signing the Note.

**WHEREFORE** Plaintiffs seek the entry of judgment rescinding the Note, plus an award of costs and any other relief this Court orders.

Jury Demand: Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Paul K. Vickrey*
Paul K. Vickrey
Dylan M. Brown
Vitale, Vickrey, Niro, Solon & Gasey
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
Phone: 312) 236-0733
vickrey@vvnlaw.com
dbrown@vvnlaw.com
***Attorneys for Plaintiff***

FILED DATE: 11/22/2019 9:49 AM    2019CH11396

# Exhibit A

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

## EXHIBIT A

## NON-RECOURSE
## SECURED PROMISSORY NOTE

$1,738,910.00

October 1, 2014

FOR VALUE RECEIVED, Dana Hokin ("Maker"), promises to pay to the order of Century America LLC (together with any subsequent holder of this Note, the "Payee"), the aggregate principal sum of one million seven hundred thirty eight thousand nine hundred ten dollars ($1,738,910.00), together with all interest accrued thereon after the date hereof and all other sums due Payee from Maker pursuant to the terms of this Secured Promissory Note (this "Note").

Interest shall accrue on the principal balance of this Note remaining unpaid from time to time at a fixed rate of 1.85% per annum, compounded annually (the "Base Rate") which is equal to the mid-term applicable federal rate in effect on October 1, 2014. Interest shall be calculated on the basis of a three hundred and sixty five (365) day year for the actual number of days in which any principal or accrued interest is due from Maker to Payee pursuant to this Note remains outstanding. Accrued interest shall be payable in cash to Payee annually on January 30 of each year, until all principal, accrued interest and all other sums due Payee from Maker pursuant to the terms of this Note (collectively, the "Indebtedness") is paid in full.

All outstanding interest and principal under this Note shall be due and payable in full on the day before the nine year anniversary of the date hereof.

Notwithstanding anything to the contrary in this Note, Payee agrees that for payment of this Note it will look solely to the Collateral or such other collateral, if any, it may now or hereafter be given to secure the payment of this Note, and no other assets of Maker or the Trust shall be subject to levy, execution or other enforcement procedure for the satisfaction of the remedies of Payee, or for any payment required to be made under this Note.

Maker may prepay all or any portion of the Indebtedness without premium or penalty. All payments on account of the Indebtedness, including prepayments, if any, shall be applied first to Payee's costs of collecting the Indebtedness, if any, then to accrued and unpaid interest and lastly to principal. Payments of the Indebtedness shall be made at such place as the legal holder of this Note may designate in writing from time to time.

To secure the payment of this Note, (A) the Maker hereby pledges to the Payee, and grants the Payee a security interest in, all of Maker's right title and interest as a member of and in 4H LLC, which currently consists of an approximate 1.65% membership interest, and (B) by executing the Note, the Dana Hokin Grantor Trust, hereby pledges to the Payee, and grants the Payee a security interest in, all of its right, title and interest as a member of an in 4H, LLC which currently consists of an approximate 13.56% membership interest (collectively, the "Company Interests"), and the proceeds and products thereof, including any and all distributions or return of capital upon or in respect of the Company Interests (except (i) as expressly provided to the contrary below for the Tax Distribution Amount, (ii) distributions applied to repay prior tax

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

distributions not included in the principal amount of this Note (which were in the amount of $108,070.54 as of July 1, 2014), (iii) distributions applied to reduce an existing advance from 4H, LLC in the amount of $1,186.00, and (iv) distributions applied to reduce charges by Maker to CALLC (or its subsidiaries) or 4H, LLC accounts, after June 30, 2014), all additional interests resulting from a split-up, revision, reclassification or other like change of the Company Interests, any subscription warrants, rights or options issued to the holders of, or otherwise in respect of the Company Interests and any distributions, dividends or other amounts issued under or in connection with the Company Interests (together with the Company Interests, the "Collateral"). The Payee shall not be bound to take any steps necessary to preserve any rights in the Collateral against prior parties, which the Maker and the Trust hereby assume to do. The Maker and the Trust shall execute and deliver, or cause to be executed and delivered, all such other documents and instruments, and shall take all such other actions, as the Payee may reasonably request from time to time, in order to maintain, protect and perfect the Payee's rights and interests (including the security interest) in the Collateral under this Note. The Maker and the Trust hereby authorizes the Payee to take all actions in its name and on its behalf necessary to perfect the security interest of the Payee in the Collateral, including the execution of any financing statement required to be filed under the UCC or the execution of a control agreement with a securities intermediary in order to perfect the security interest by control as provided under the UCC.

If the Maker or the Trust receives any cash or other property (x) from 4H LLC ("4H") in respect of the Company Interests or (y) in connection with the sale or exchange of any Collateral, the Maker shall deliver such cash or property to the Payee to be applied as follows:

   a.  all cash that is distributed to the Maker or the Trust by the Company, including all of the Maker's and the Trust's share of the proceeds from the sale of all or substantially all of the assets of the Company (other than the Tax Distribution Amount), and all cash received by the Maker or the Trust in connection with the sale or exchange of any Collateral (other than the Tax Distribution Amount) shall be paid to the Payee as a mandatory prepayment and shall be applied against all accrued and unpaid interest due hereunder and thereafter the principal balance of this Note, whether than due or due in the future; and

   b.  all property, other than cash, that is distributed to the Maker or the Trust by the Company or received by the Maker or the Trust in connection with the sale or exchange of any Collateral shall be delivered to the Payee as additional Collateral as provided below.

Maker and the Trust, jointly and severally, represent and warrant that they own, and will at all times own, all of the Collateral and that, except for the security interest granted herein, no other pledge, assignment or security agreement, control agreement or financing statement covering any of the Collateral has been or will be executed and no pledge, assignment or security interest has attached or been perfected or will attach or be perfected in any of the Collateral, without the prior written consent of the Payee.

If any representation made by the Maker or the Trust under this Note is untrue in any material respect, or if the Maker fails to make any payment on this Note or Maker or the Trust fail to comply with any of their other obligations under this Note when due and such failure

FILED DATE: 11/22/2019 9:49 AM    2019CH11396

continues for at least thirty (30) days after notice thereof from the Payee, then the Maker and the Trust shall be in "Default" under this Note (except that in the case interest is not paid when due, an event of Default shall not occur unless such failure continues for at least 365 days after notice thereof from the Payee). In the event of a Default by the Maker or the Trust hereunder, the Payee may, at its option (in addition to any other rights and remedies available to it under applicable law or otherwise), by written notice to the Maker and the Trust but without any other notice of any kind, declare all or any portion of the unpaid principal balance under this Note to be due and payable, together with all accrued interest, whereupon all such sums shall become immediately due and payable without further notice, demand or declaration. In the absence of such a Default, the Maker and the Trust shall be entitled to vote the Collateral.

In the event of a Default by the Maker or the Trust under this Note, the Payee shall be entitled to reasonable costs of collection, including court costs and reasonable attorney's fees and all the rights, remedies, powers, and privileges available to secured parties and creditors under the UCC and other applicable law and under this Note. Without limiting the generality of the foregoing, in the event a Default has occurred and is continuing after 30 days' notice from Payee, the Payee may sell, assign or otherwise dispose of the Collateral, or any part thereof, at public or private sale, provided that the Payee shall give the Maker and the Trust at least five days' prior written notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made unless the Collateral is of a type customarily sold on a recognized market. The net proceeds realized upon any such disposition, after deduction for the expenses of holding, preparing for sale, selling or the like and the reasonable attorneys' fees and legal expenses incurred by the Payee, shall be applied to the payment of all amounts due hereunder. The Payee shall account to the Maker and the Trust for any surplus realized on such disposition.

Without limiting the generality of the foregoing, in the event a Default has occurred and is continuing after 30 days' notice from Payee, interest on the unpaid amount shall accrue at the rate of two percent (2%) per annum in excess of the Base Rate, or the highest rate permitted by law, whichever is less, from the day such amount is due to the day it is paid.

Maker and the Trust hereby waive presentment for payment, protest, notice of presentment, protest, dishonor, default, non-payment and maturity and all other notices and demands whatsoever except those required under this Note. Any forbearance by Payee or the legal holder of this Note in exercising any right or remedy under this Note, at law, in equity or otherwise, shall not be or be deemed to be a waiver, and shall not preclude the subsequent exercise, of any such right or remedy. Payee's rights and remedies pursuant to this Note are cumulative, are not exclusive and no right or remedy under this Note, at law, in equity or otherwise shall be, or be deemed to be, the exclusive right or remedy of Payee or the legal holder of this Note.

This Note shall be governed by, interpreted under and construed in accordance with the laws and decisions of the State of Illinois as to interpretation, enforcement, validity, construction, effect and in all other respects.

Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective, valid and enforceable under applicable law, but if any provision of this Note is held

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

to be invalid or unenforceable by a court of competent jurisdiction, such provision shall be severed here from and such invalidity or unenforceability shall not affect any other provision of this Note, the balance of which shall remain in and have its intended full force and effect; provided, however, if such provision may be modified so as to be valid and enforceable as a matter of law, such provision shall be deemed to have been modified so as to be valid and enforceable to the maximum extent permitted by law. If any rate of interest set forth in this Note is greater than the maximum rate of interest permitted to be charged or collected by applicable law, the interest rate set forth in this Note shall be reduced to the maximum rate permitted to be charged or collected by applicable law.

IN WITNESS WHEREOF, Maker and the Trust have executed and delivered this Note to Payee as of the date first written above.

DANA HOKIN

TRUSTEE OF THE DANA HOKIN GRANTOR
TRUST U/T/A DATED APRIL 19, 1991

A-4

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

# Exhibit B

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

## SECURED PROMISSORY NOTE
## PURCHASE AGREEMENT

THIS SECURED PROMISSORY NOTE PURCHASE AGREEMENT (the "Agreement") is entered into by Century America LLC, as seller ("Seller"), and Richard Hokin, trustee of the Richard Hokin Revocable Trust, as purchaser (the "Purchaser"), effective as of February 1, 2016 (the "Effective Date").

### W I T N E S S E T H:

WHEREAS, Seller is payee under that certain Nonrecourse Secured Promissory Note, dated October 1, 2014 (the "Secured Promissory Note"), executed by Dana Hokin (the "Borrower");

WHEREAS, the original principal amount of the Secured Promissory Note is $1,738,910.00;

WHEREAS, as of the Effective Date the outstanding principal balance under the Secured Promissory Note is $1,738,910.00 (the "Current Indebtedness"), and there is no accrued unpaid interest;

WHEREAS, Seller desires to sell the Secured Promissory Note to the Purchaser for an amount equal to the Current Indebtedness (the "Purchase Price"); and

WHEREAS, Purchaser desires to purchase the Secured Promissory Note for the Purchase Price.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Purchaser hereby agree as follows:

1.      Seller hereby assigns to Purchaser all of Seller's right, title and interest in and to the Secured Promissory Note, free and clear of all liens, claims, pledges, encumbrances and security interests of any kind, nature and description and without recourse, including Seller's rights with respect to the Collateral, as defined in the Secured Promissory Note.

2.      Seller agrees to do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, assignments, notices, transfers and assurances as may be reasonably required by Purchaser for carrying out the intentions or facilitating the consummation of the transactions contemplated by this Agreement.

3.      Purchaser hereby accepts the foregoing assignment and, simultaneously with the execution of this Agreement, Purchaser is executing and delivering a promissory note payable to Seller in the amount of the Purchase Price, in the form attached hereto as Exhibit A.

4.      This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

FILED DATE: 1/22/2019 9:49 AM    2019CH11396

5.      This Agreement shall be binding upon and shall inure to the benefit of Seller and Purchaser and their respective successors and assigns.

6.      This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

IN WITNESS WHEREOF, each of the undersigned has executed this Secured Promissory Note Purchase Agreement effective as of the Effective Date.

**SELLER**                                          **PURCHASER**

**Century America LLC**                   **Richard Hokin Revocable Trust**


By: _____        By: _____
      William Hokin, a manager                 Richard Hokin, trustee

and



By: _____
      Richard Hokin, a manager

FILED DATE: 1/22/2019 9:49 AM   2019CH11396

5.      This Agreement shall be binding upon and shall inure to the benefit of Seller and Purchaser and their respective successors and assigns.

6.      This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

IN WITNESS WHEREOF, each of the undersigned has executed this Secured Promissory Note Purchase Agreement effective as of the Effective Date.

**SELLER**                                     **PURCHASER**

**Century America LLC**                   **Richard Hokin Revocable Trust**

By: _____      By: _____
    William Hokin, a manager              Richard Hokin, trustee

and

By: _____
    Richard Hokin, a manager

FILED DATE: 11/22/2019 9:49 AM    2019CH11396

**EXHIBIT A**
**PROMISSORY NOTE**

$1,738,910.00                                                    February 1, 2016

FOR VALUE RECEIVED, Richard Hokin, individually and as trustee of the Richard Hokin Revocable Trust u/t/a dated March 7, 1986 ("Maker"), promises to pay to the order of Century America LLC (together with any subsequent holder of this Note, the "Payee"), the aggregate principal sum of one million seven hundred thirty eight thousand nine hundred ten dollars ($1,738,910.00), together with all interest accrued thereon after the date hereof and all other sums due Payee from Maker pursuant to the terms of this Promissory Note (this "Note").

Interest shall accrue on the principal balance of this Note remaining unpaid from time to time at a fixed rate of 1.85% per annum, compounded annually (the "Base Rate"). Interest shall be calculated on the basis of a three hundred and sixty five (365) day year for the actual number of days in which any principal or accrued interest is due from Maker to Payee pursuant to this Note remains outstanding. Accrued interest shall be payable in cash to Payee annually on January 31 of each year, until all principal, accrued interest and all other sums due Payee from Maker pursuant to the terms of this Note (collectively, the "Indebtedness") is paid in full.

Maker agrees that in addition to interest payments required under this Note, the amount of any principal payment Maker receives from Dana Hokin under that certain Nonrecourse Secured Promissory Note, dated October 1, 2014, shall be paid to Payee and applied towards the payment of the Indebtedness under this Note.

All outstanding interest and principal under this Note, if not paid sooner, shall be due and payable in full on the day before the nine year anniversary of the date hereof.

Maker may prepay all or any portion of the Indebtedness without premium or penalty.

All payments on account of the Indebtedness, including prepayments, if any, shall be applied first to Payee's costs of collecting the Indebtedness, if any, then to accrued and unpaid interest and lastly to principal. Payments of the Indebtedness shall be made at such place as the legal holder of this Note may designate in writing from time to time.

If any representation made by the Maker under this Note is untrue in any material respect, or if the Maker fails to make any payment on this Note or Maker fails to comply with any of its other obligations under this Note when due and such failure continues for at least thirty (30) days after notice thereof from the Payee, then the Maker shall be in "Default" under this Note (except that in the case interest is not paid when due, an event of Default shall not occur unless such failure continues for at least 365 days after notice thereof from the Payee). In the event of a Default by the Maker hereunder, the Payee may, at its option (in addition to any other rights and remedies available to it under applicable law or otherwise), by written notice to the Maker but without any other notice of any kind, declare all or any portion of the unpaid principal balance under this Note to be due and payable, together with all accrued interest, whereupon all such sums shall become immediately due and payable without further notice, demand or declaration.

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

In the event of a Default by the Maker under this Note, the Payee shall be entitled to reasonable costs of collection, including court costs and reasonable attorney's fees and all the rights, remedies, powers, and privileges available to creditors under applicable law and under this Note. Without limiting the generality of the foregoing, in the event a Default has occurred and is continuing after 30 days' notice from Payee, interest on the unpaid amount shall accrue at the rate of two percent (2%) per annum in excess of the Base Rate, or the highest rate permitted by law, whichever is less, from the day such amount is due to the day it is paid.

Maker hereby waives presentment for payment, protest, notice of presentment, protest, dishonor, default, non-payment and maturity and all other notices and demands whatsoever except those required under this Note. Any forbearance by Payee or the legal holder of this Note in exercising any right or remedy under this Note, at law, in equity or otherwise, shall not be or be deemed to be a waiver, and shall not preclude the subsequent exercise, of any such right or remedy. Payee's rights and remedies pursuant to this Note are cumulative, are not exclusive and no right or remedy under this Note, at law, in equity or otherwise shall be, or be deemed to be, the exclusive right or remedy of Payee or the legal holder of this Note.

This Note shall be governed by, interpreted under and construed in accordance with the laws and decisions of the State of Illinois as to interpretation, enforcement, validity, construction, effect and in all other respects.

Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective, valid and enforceable under applicable law, but if any provision of this Note is held to be invalid or unenforceable by a court of competent jurisdiction, such provision shall be severed here from and such invalidity or unenforceability shall not affect any other provision of this Note, the balance of which shall remain in and have its intended full force and effect; provided, however, if such provision may be modified so as to be valid and enforceable as a matter of law, such provision shall be deemed to have been modified so as to be valid and enforceable to the maximum extent permitted by law. If any rate of interest set forth in this Note is greater than the maximum rate of interest permitted to be charged or collected by applicable law, the interest rate set forth in this Note shall be reduced to the maximum rate permitted to be charged or collected by applicable law.

IN WITNESS WHEREOF, Maker has executed and delivered this Note to Payee as of the date first written above.

_____     _____
Richard Hokin

Richard Hokin Revocable Trust

By: _____     _____
Richard Hokin, as trustee of the Richard Hokin
Revocable Trust u/t/a dated March 7, 1986

A-2

FILED DATE: 11/22/2019 9:49 AM  2019CH11396

## ALLONGE

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Century America LLC ("Lender") hereby endorses to the order of Richard Hokin, trustee of the Richard Hokin Revocable Trust effective as of the Effective Date, without recourse, all of the Seller's right, title and interest in and to that certain Nonrecourse Secured Promissory Note, dated October 1, 2014, executed by Dana Hokin and payable to the order of the Lender in the original principal amount of $1,738,910.00.

Century America LLC

By: _____
     William Hokin, a manager

and

By: _____
     Richard Hokin, a manager

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

## ALLONGE

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Century America LLC ("Lender") hereby endorses to the order of Richard Hokin, trustee of the Richard Hokin Revocable Trust effective as of the Effective Date, without recourse, all of the Seller's right, title and interest in and to that certain Nonrecourse Secured Promissory Note, dated October 1, 2014, executed by Dana Hokin and payable to the order of the Lender in the original principal amount of $1,738,910.00.

Century America LLC

By: _____
    William Hokin, a manager

and

By: _____
    Richard Hokin, a manager

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

### Notice of Transfer of the Nonrecourse Secured Promissory Note

The undersigned hereby notifies you, Dana Hokin, individually and as trustee of the Dana Hokin Grantor Trust, of the assignment to Richard Hokin, as trustee of the Richard Hokin Revocable Trust, of that certain Nonrecourse Secured Promissory Noted, dated October 1, 2014, executed by you, individually and as trustee, in favor of Century America LLC, and directs that all future payments due under the Secured Promissory Note be made to Richard Hokin, as trustee (or as he otherwise directs at any time and from time to time).

Century America LLC                              Richard Hokin Revocable Trust

By: _____                   By: _____
    William Hokin, a manager                         Richard Hokin, trustee

and

By: _____
    Richard Hokin, a manager

4824-2799-9788, v. 4

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

**Notice of Transfer of the Nonrecourse Secured Promissory Note**

The undersigned hereby notifies you, Dana Hokin, individually and as trustee of the Dana Hokin Grantor Trust, of the assignment to Richard Hokin, as trustee of the Richard Hokin Revocable Trust, of that certain Nonrecourse Secured Promissory Noted, dated October 1, 2014, executed by you, individually and as trustee, in favor of Century America LLC, and directs that all future payments due under the Secured Promissory Note be made to Richard Hokin, as trustee (or as he otherwise directs at any time and from time to time).

Century America LLC                           Richard Hokin Revocable Trust

By: _____        By: _____
William Hokin, a manager                              Richard Hokin, trustee

and

By: _____
Richard Hokin, a manager

4824-2799-9788, v. 4

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons                                          (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Dana Hokin and Dana Hokin Grantor Trust
_____
                                    (Name all parties)      Case No.   2019 CH 11396
                           v.
_____
Richard Hokin, et al.

### ☑ SUMMONS   ☐ ALIAS SUMMONS

To each Defendant: **Richard Hokin, 25 Shipway Road, Darien, Connecticut 06820**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**                **(08/01/18) CCG 0001 B**

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

Atty. No.:  61334

Atty Name:  Dylan M. Brown

Atty. for:  Plaintiffs

Address:  311 S. Wacker, Suite 2470

City:  Chicago

State:  IL    Zip:  60606

Telephone:  (312) 236-0733

Primary Email:  dbrown@vvnlaw.com

Witness: _____

_____

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person):

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

FILED DATE: 11/22/2019 9:49 AM  2019CH11396

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 11/22/2019 9:49 AM  2019CH11396

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons                                  (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Dana Hokin and Dana Hokin Grantor Trust
_____
                                  (Name all parties)       Case No.      2019 CH 11396
                                                                         _____
                     v.
_____
Richard Hokin, et al.

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:    `Richard Hokin Revocable Trust, c/o Richard Hokin, trustee`
                      `25 Shipway Road, Darien, Connecticut 06820`

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**                **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 61334

Atty Name: Dylan M. Brown

Atty. for: Plaintiffs

Address: 311 S. Wacker, Suite 2470

City: Chicago

State: IL    Zip: 60606

Telephone: (312) 236-0733

Primary Email: dbrown@vvnlaw.com

Witness: _____

_____

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

FILED DATE: 11/22/2019 9:49 AM 2019CH11396

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

- Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 11/22/2019 9:49 AM  2019CH11396

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Dana Hokin and Dana Hokin Grantor Trust
_____
(Name all parties)        Case No.    2019 CH 11396
                                      _____
v.

Richard Hokin, et al.
_____

☑ **SUMMONS**  ☐ **ALIAS SUMMONS**

To each Defendant:  **Century America, LLC, c/o Gail P. Bley**
**222 N. LaSalle Street, Suite 300, Chicago, Il 60606**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**          **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 61334

Atty Name: Dylan M. Brown

Atty. for: Plaintiffs

Address: 311 S. Wacker, Suite 2470

City: Chicago

State: IL    Zip: 60606

Telephone: (312) 236-0733

Primary Email: dbrown@vvnlaw.com

Witness: _____

_____
DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

FILED DATE: 11/22/2019 9:49 AM 2019CH11396

FILED DATE: 11/22/2019 9:49 AM   2019CH11396

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org